**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

TIMOTHY B,[1]   Case No. 2:22-cv-3834

    Plaintiff,   Bowman, M.J.

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents a single claim of error for this Court's review.[2] As explained below, the Court will AFFIRM the finding of non-disability because it is supported by substantial evidence in the record as a whole.

**I. Summary of Administrative Record**

On November 4, 2020, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning on March 3, 2020 based upon low blood pressure, lightheadedness, and high blood pressure that he experienced after bariatric surgery for morbid obesity. (Tr. 61). After his claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). On

---

[1] Due to significant privacy concerns in social security cases, this Court refers to claimants only by their first names and last initials. *See* General Order 22-01.
[2] The parties have consented to final disposition before the undersigned magistrate judge in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

1

October 21, 2021, Plaintiff appeared telephonically with his attorney and gave testimony before ALJ Noceeba Southern; a vocational expert also testified. (Tr. 31-59).

Plaintiff was 58 years old on his alleged disability onset date, categorized as an individual of advanced age; he remained in the same age category at the time of the ALJ's decision. He has a high school education and reported past work as an industrial truck driver. He lives alone in a single family two-story home but testified that his bedroom and bathroom are on the ground floor, and that he stays downstairs. (Tr. 21, 44). He testified that his adult daughter and adult sons and/or their girlfriends assist with household chores and groceries. (Tr. 44-45).

On November 12, 2021, the ALJ issued an adverse written decision that concluded that Plaintiff is not disabled. (Tr. 15-27). The ALJ determined that Plaintiff has the following severe impairments: "prostate cancer, obesity status post sleeve gastrectomy; orthostatic hypotension/hypertension." (Tr. 18). The ALJ also found that Plaintiff has the medically determinable but nonsevere impairments of chronic renal failure, idiopathic gout, hypokalemia, and anemia with associated rare and inconsistent symptoms of tachycardia and fatigue. (Tr.18). The ALJ noted a diagnosis of diabetes and of obstructive sleep apnea in the record.  However, the diabetes appears to have resolved with Plaintiff's post-surgery weight loss, and the sleep apnea had significantly improved. Therefore, the ALJ found both conditions to be non-severe. (Tr. 18-19). Last, the ALJ noted some reference to chronic pain syndrome and lumbar pain with sciatica, but did not find those conditions to be medically determinable impairments. (Tr. 19).

Considering all of Plaintiff's severe and nonsevere impairments, the ALJ determined that none, either alone or in combination, met or medically equaled any Listing

in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (*Id.*) The ALJ next determined that Plaintiff retains a Residual Functional Capacity ("RFC") that permits him to perform a reduced range of medium work, subject to the following limitations:

> [He] should avoid ladders, ropes, scaffolds; tolerate frequent stooping. Avoid hazards, including moving machinery, heavy machinery, and unprotected heights. He would be off-task up 30 minutes of the day, spread throughout the course of the day, in increments of three to four minutes. Avoid concentrated exposure to heat. He would benefit from a "sit/stand" option every hour for two to three minutes: for every hour of standing, sitting two to three minutes.

(Tr. 20).

The ALJ agreed that Plaintiff could no longer work as an industrial truck driver. However, based upon Plaintiff's age, education, and RFC, and considering testimony from the vocational expert, the ALJ found that Plaintiff still could perform a significant number of jobs in the national economy, including the representative occupations of machine feeder, handpacker, and packing feeding tender. (Tr. 26-27). Therefore, the ALJ determined that Plaintiff was not under a disability. (*Id.*) The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

Plaintiff does not challenge the ALJ's findings on which of his impairments were severe, or the finding that he did not meet or equal any Listing. Rather, Plaintiff argues that the RFC as determined by the ALJ lacks substantial support based upon an error in the assessment of his treating physician's opinion. The Court finds no error.

3

**II. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

4

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

### III. Summary of Relevant Evidence[3]

Plaintiff was initially evaluated for bariatric surgery to treat his morbid obesity in May 2019. At the time, he weighed in excess of 450 pounds with a BMI of 54.73. (Tr. 21, 685). His preoperative evaluation noted complaints of shortness of breath but no

---

[3] Both parties refer this Court to the ALJ's recitation of relevant evidence, which the Court finds to be accurate. (*See* Doc. 8 at 4, PageID 768; Doc. 10 at 2, PageID 781).

5

pulmonary impairment other than obstructive sleep apnea. His vital signs and physical examination were all normal. (*Id.*) In September 2019, he was evaluated by cardiology as part of the assessment for surgery. At that time, he was still employed and actively exercising with no limitation in walking up one or two flights of stairs. He denied lightheadedness, dizziness, and syncope and his blood pressure was well controlled. (Tr. 22. 278). He reported occasional dyspnea with exertion that was attributed to deconditioning. (Tr. 22 citing Tr. 280). In November 2019, he also complained of cough, congestion and fatigue and called off work and filed for FMLA. (*Id.*; see also Tr. 691).

Soon thereafter in January 2020, Plaintiff underwent bariatric sleeve gastrectomy. Surgery went well with immediate post-operative reports reflecting positive significant weight loss, daily exercise, and no significant complications or adverse post-operative symptoms. (Tr. 22). A March 2020 report similarly reported weight loss and no significant adverse symptoms, although Plaintiff did then endorse some dizziness and lightheadedness upon standing.[4] An examination confirmed that his blood pressure had dropped. He stated his PCP was working to adjust his blood pressure medication based on his significant weight loss to address this new symptom. (Tr. 22). However, at a follow-up exam, Plaintiff was noted not to have adjusted his medications as directed. Once he followed that medical advice, he reported improvement with his lightheadedness on occasion with standing. (Tr. 22).

> Orthostatic hypotension was attributed to improved blood pressure from significant weight loss and incorrect medication use. The claimant continued to do well with regards to weight loss and voiced no other complaints. He was cautioned on fall risk at that time. Soon after, the

---

[4]Plaintiff's alleged onset date of March 3, 2020 appears to be related to the first date on which he experienced orthostatic symptoms.

6

> claimant's medications were again adjusted to address orthostatic hypotension. He had improvement noted and was taken off blood pressure medication.

(Tr. 23).

At a telephonic visit In April 2020, Plaintiff reported having experienced a single severe episode of lightheadedness for a period of four hours, but that was attributed to a medication side effect from his use of sildenafil. (Tr. 24). Apart from that medication-induced incident, Plaintiff reported only that he "occasionally has a little lightheadedness when he stands up, but very manageable." (Tr. 23, citing Tr. 437). The ALJ summarized his subsequent medical history through July of 2020 as follows:

> He had elevated blood pressure with significant drop when standing and thus potential fall risk. Generally, his symptoms were improving. He continued to do well with weight loss and had BMI of 40.43. In May, he reported symptomatic orthostatic hypotension with mild dehydration noted with some difficulty with fluid and food intake postoperatively. Notably, the claimant was off diabetic medications with an A1C of 5.9%. He had an otherwise unremarkable physical exam. His lightheadedness and dizziness occurred primarily with standing. Lab findings subsequently noted anemia, which contributed to orthostatic hypotension. This required only iron supplements, however. … Follow-up in June document symptomatic orthostatic hypotension with blood pressure dropping when standing. He had improved BMI of 38 and increased exercise load was recommended utilizing an exercise bike and core exercises. The claimant subsequently reported symptomatic improvement in lightheadedness. He had improvement in orthostasis on exam. He increased exercise load as recommended. His exam was otherwise normal. In July, the claimant reported that hot weather caused dizziness. He was a little lightheaded with standing from sitting but otherwise denied issues. The claimant was also considering retirement at that time. His blood pressure dropped with standing on exam. He had BMI of 35.92 and otherwise normal examination, however. He was subsequently briefly hospitalized for orthostatic with dehydration with improvement noted but persistent symptoms and findings. He had difficulty with hydration due to gastric sleeve. He reported improvement in August but with some difficulty in heat. His orthostasis improved and was restarted on amlodipine for blood pressure. The claimant subsequently required emergency department admission for dehydration, orthostasis, and acute on chronic renal failure.

(Tr. 23). A follow-up note in August 2020 reflected that a prior diagnosis of hypertension had recently resolved due to weight loss. (Tr. 406). The same note attributed a July episode of severe symptoms that led to an ER visit to dehydration and inadequately adjusted blood pressure medication, noting that "he is off his blood pressure meds at this point." (Tr. 408).

By January 2021, Plaintiff reported a weight loss total of 195 pounds. (Tr. 712). Although he reported orthostatic issues "in the past," he denied continuing issues and reported he was "[n]o longer having lightheadedness on standing." (*Id*.; *see also* Tr. 23). He walked without assistance and with normal gait, and denied any fatigue, lightheadedness or other adverse symptoms. (Tr. 23-24). Plaintiff reported that he had "retired" from work, and his BMI was down to 31.88. (Tr. 24). His examination was unremarkable, (Tr. 714), but Dr. Ward's note concludes that he is "[s]till mildly orthostatic but much improved." (Tr. 715).

At follow-up visits in April and July 2021, he continued to do well. Although he again reported that he "occasionally still feels [a] little lightheaded," he described it as "nothing compared to" his prior symptoms. (Tr. 724; Tr. 24). He continued to deny other adverse symptoms and his doctor found no orthostasis on exam. (Tr. 24). He had no limitations on walking with normal gait, required no assistive device and reported no falls. (*Id*.) The July 28, 2021 note reiterates the significant improvement in Plaintiff's chronic conditions. His orthostatic hypotension was again noted to be much improved with no drop on exam, and his blood pressure was well controlled. (*Id*.) A new diagnosis of prostate cancer required only conservative management (monitoring). (Tr. 24).

### IV. Analysis

### A. The ALJ's RFC Determination

To determine Plaintiff's RFC, the ALJ reviewed and discussed the record as a whole, including the medical records, Plaintiff's own statements, and the medical opinion evidence. This judicial appeal focuses on the ALJ's evaluation of a single medical opinion from Plaintiff's treating physician, which the ALJ found to be "unpersuasive." Plaintiff argues that the ALJ's analysis includes an articulation error that fundamentally undermines the RFC determination and results in a disability decision that is not substantially supported.

After considering the record, including, but not limited to, the medical opinion at issue, the ALJ concluded that the RFC as determined sufficiently accommodated his limitations.

> The claimant has orthostatic hypotension and hypertension but with significantly improved orthostasis and well controlled blood pressure noted in more recent evidence. He has had near total resolution of episodes of lightheadedness. The sit/stand option in addition to frequent stooping and heat limitation further accommodates this impairment, as the claimant's symptoms are exacerbated by hot conditions and changes in position. The claimant's frequent urination due to prostate cancer and treatment as well as symptoms of lightheadedness and dizziness are also accommodated by additional allowance for time off-task.

(Tr. 24).

Before turning to the ALJ's analysis of the disputed medical opinion, it is worth noting that Plaintiff does not fault other evidence that the ALJ evaluated to determine his RFC, including her summary of all relevant medical records (detailed above) or an adverse credibility/consistency determination concerning Plaintiff's own statements:

> [T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the

9

>medical evidence and other evidence in the record for the reasons explained in this decision. The claimant's testimony is not consistent with the evidence of record which consistently notes no falls, no issues with balance, normal walking, no use of ambulatory aids, independent in all activities of daily living, and with recent marked improvement in orthostatic symptoms. Records show he was actively engaged in daily exercise inconsistent with his allegations.

(Tr. 21).

### B. The Medical Opinion Evidence

In addition to her review of the medical records and Plaintiff's statements, the ALJ reviewed medical opinion evidence from two agency physicians and a primary care physician, Alan Ward, M.D. Plaintiff argues that the ALJ's analysis of Dr. Ward's opinion is overly cursory, and "fails to comply with the unambiguous articulation requirement of 20 CFR 404.1520c(b)(2)." (Doc. 8 at 7, PageID 771).

The alleged articulation error is based upon regulations that took effect on March 27, 2017. The revised regulations eliminated a longstanding "treating physician rule" and clearly state that the Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 CFR 404.1520c(a). Instead, the ALJ is to consider and articulate "how persuasive" each medical opinion is. 20 CFR 404.1520c(b). In determining the level of "persuasiveness," an ALJ is required to consider five factors, including (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 CFR 404.1520c(c)(1)-(5). However, the ALJ is required to explicitly discuss only the first two factors of supportability

10

and consistency, described in the regulations as the "most important" factors. *See* 20 CFR 404.1520c(b)(2); § 404.1520c(b)(2) (stating that the ALJ must "explain how [he/she] considered the supportability and consistency factors….").

### 1. The Consulting Opinions

In his reply memorandum, Plaintiff insists that the alleged articulation error was particularly egregious because "Dr. Ward's opinion is the only medical opinion in the record regarding Plaintiff's limitations," and that "[t]here are no differing medical opinions." (Doc. 11 at 2, PageID 792). That is incorrect. Two agency physicians also reviewed Plaintiff's records and rendered medical opinions that Plaintiff's medically determinable impairments of lightheadedness, hypotension and hypertension and obesity were "not severe." (*See* Tr. 62-63). A finding that an impairment is not severe is equivalent to an opinion that an impairment does not "significantly limit" Plaintiff's ability to do basic work activities. *See* 20 C.F.R. § 404.1522; *see also* SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985) (explaining that an impairment is not severe if it "has no more than a minimal effect on [Plaintiff's] physical or mental ability(ies) to perform basic work activities.").

Lynne Torello, M.D. first offered her opinion on December 31, 2020, nine months after Plaintiff's alleged onset date. (Tr. 64). In support, Dr. Torello cited to records showing improvement in Plaintiff's chronic conditions, and normal blood pressure and unremarkable exam findings on August 24, 2020 following a brief hospitalization for dehydration. On reconsideration roughly a year after Plaintiff's alleged onset date, on March 19, 2021, Dimitri Teague, M.D. agreed. In his opinion, Dr. Teague additionally cited

11

to the January 21, 2021 clinical record in which Plaintiff reported that he was no longer having lightheadedness with standing. (Tr. 65, 67).

The opinions of the two consulting physicians that Plaintiff's impairments were not severe at Step 2 of the sequential analysis were medical opinions about the degree of limitation. However, the ALJ rejected both consulting' opinions that Plaintiff had no significant work-related limitations as "unpersuasive." Considering the longitudinal record as a whole, the ALJ found that Plaintiff's impairments were in fact "severe" and caused more than minimal limitations. (See Tr. 25). The ALJ agreed with the consulting opinions only to the limited extent that their opinions supported her determination that Plaintiff's conditions did not meet or medically equal any listed impairment at Step 3, and were not disabling. (Tr. 25).

### 2. Dr. Ward's Opinions

The Court finds no error in the ALJ's analysis of the only other medical opinion in the record, offered by Plaintiff's treating physician. Dr. Ward endorsed RFC limitations on a one-page check-box form dated three days prior to Dr. Teague's opinion. The March 16, 2021 form opines that Plaintiff can lift/carry up to 25 pounds occasionally, stand and/or walk for no more than 30 minutes at a time if not in heat, and cannot work in a heated or hot environment.[5] (Tr. 721). Dr. Ward further opines that Plaintiff can "never" bend, squat or crawl and only "occasionally" climb stairs and reach above shoulder level. (Id.) Last, the form opines that Plaintiff cannot work around unprotected heights, moving machinery,

---

[5]The Commissioner points out that the form was completed in blue ink, but that Dr. Ward's signature is in black ink, with no explanation for the discrepancy. Even assuming that the form was completed by someone other than Dr. Ward, however, his signature endorses the limitations recorded therein.

or exposure to marked changes in temperature and humidity, but that he had no limitations in driving or with respect to exposure to dust, fumes or gases. (*Id.*)

After accurately summarizing Dr. Ward's opinions, the ALJ explained that she did not find them to be persuasive because they

> generally overstate[] the claimant's exertional limitations, which are not consistent with nor supported by the evidence as a whole, including Dr. Ward's own treatment records (see Exhibits 2F, 3F, 6F). The claimant has normal physical exams except orthostasis and obesity; however, these conditions improved over time. The claimant has other chronic medical conditions but no significant adverse symptoms or complications. The claimant's renal function has recently improved as well. His blood pressure is controlled with much better orthostatic findings. He does not exhibit or endorse symptoms like fatigue, shortness of breath at rest or with exertion, syncope, chest pain or palpitations. This is not consistent with the considerable limitations put forth by Dr. Ward in standing, walking, and postural activities. Indeed, the claimant endorses regular daily exercise that would suggest greater overall abilities than Dr. Ward's opinion. The residual functional capacity adequately accommodates the claimant's limitations, including avoid concentrated heat, no work around certain workplace hazards, and avoid ladders, ropes, and scaffolds.

(Tr. 25).

Plaintiff urges this Court to remand to require the ALJ to provide more detailed discussion of the supportability and consistency factors. Without additional analysis, Plaintiff argues that the RFC finding cannot be upheld as substantially supported. However, "the regulations that require ALJs to explain their analysis of the supportability and consistency factors do not require those explanations to contain a specific level of detail," but instead contemplate that "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *See Chad T. v. Comm'r of Soc. Sec. Admin.*, Case No. 3:21-cv-00052, 2022 WL 4355001 at *8 (S.D. Ohio Sept. 20, 2022) (quoting Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5854 (Jan. 18, 2017)). It is true that the ALJ did not use the words "supportability" or "consistency." But again, the

13

regulations do not require an ALJ to use "magic words" or "any specific phrasing referencing the regulations' language." *Sovey v. Kijakazi*, Case No. 5:20-cv-00386-MAS2022 WL 447052, at *4 (E.D. Ky. Feb. 9, 2022) (collecting cases). Here, the ALJ's analysis of both factors is clear, adequately detailed, and substantially supported. *See Sasha M. v. Comm'r*, Case No. 2:22-cv-2101, 2023 WL 1793536, at *6 (S.D. Ohio Feb. 7, 2023) ("While the ALJ did not use the 'magic words' supportability and consistency, her line of reasoning addressed both.").

With respect to the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." 20 CFR 404.1520c(c)(1). Here, the ALJ pointed out that Dr. Ward offered essentially no supporting explanations at all for his check-box opinions. A check-the-box opinion with "very little explanation or rationale" is not supported. *Barber v. Comm'r of Soc. Sec. Admin.*, No. 1:20-CV-00064, 2022 WL 853208, at *3 (M.D. Tenn. Mar. 22, 2022). The form offers no hint of explanation for either the lifting and carrying restriction or the stooping restriction, and Plaintiff points to no objective testing,[6] or any other evidence either in Dr. Ward's notes or elsewhere in the record that would support those limitations.[7]

The only support that Plaintiff cites to is his diagnoses of obesity and orthostasis. But that is not *support provided by Dr. Ward*, who failed to cite either to any diagnosis or

---

[6]Despite a somewhat misleading title as a "Physical Capacity Evaluation", there is nothing in the record to suggest that the one-page form signed by Dr. Ward is based upon objective testing or actual "functional capacity exam" ("FCE"). *Contrast Hargett v. Commissioner of Social Security*, 964 F.3d 546 (6th Cir. 2020).
[7]The exertional limitation is particularly important. If the ALJ had adopted Dr. Ward's lifting and carrying limitations, Plaintiff would have been limited to light work. In combination with his advanced age, that would have rendered him presumptively disabled under a Grid Rule.

14

to other evidence that would support the limitations listed on the one-page "opinion" form.[8] In addition, it is well-established that a mere diagnosis says nothing about the level of functional impairment, if any, during the relevant disability period. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).

Moreover, the ALJ discussed the relevant evidence concerning Plaintiff's orthostasis and obesity throughout her opinion. *Accord Avery v. Comm'r*, Case No. 1:18-cv-845, 2019 WL 2360914, at *18 (N.D. Ohio Apr. 2, 2019) (affirming where ALJ's decision did not mischaracterize or ignore evidence pertaining to plaintiff's orthostatic intolerance (dizzy spells) or other symptoms), R&R adopted at 2019 WL 2358973 (N.D. Ohio June 4, 2019). The ALJ accurately summarized objective and clinical medical records that included normal examination findings, as well as Dr. Ward's own treatment records that reflected consistent observed and reported improvement over time. Dr. Ward noted that Plaintiff had normal cardiovascular and pulmonary examinations with full ranges of motion, no edema, no focal neurological deficits, and normal motor and sensory examinations (Tr. at 25; *see also, generally*, Tr. 408, 412, 416, 420, 424, 427-28, 431, 435, 450, 454, 458, 462, 466, 469, 714, 727, 735). The ALJ discussed the longitudinal record at great length. (*Id.*) Thus, the ALJ more than sufficiently discussed the "supportability" factor in evaluating Dr. Ward's opinions.

The ALJ also adequately discussed the consistency factor. "The more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical

---

[8] A few narrative phrases refer to Plaintiff's alleged sensitivity to heat, including a statement that Plaintiff "passes out in heat,"(Tr. 721), for which there is no supporting evidence.

15

sources in the claim, the more persuasive the medical opinion(s)...." 20 CFR 404.1520c(c)(2). The ALJ specifically pointed out how Dr. Ward's lifting and carrying limitations and the postural limitations were at odds with the rest of the record, including numerous normal findings on physical examinations, and Plaintiff's own statements in which he frequently denied significant limitations to his physicians (including severe orthostatic symptoms) and endorsed regular daily exercise on a stationary bike. (Tr. 22, 223).

Over time, Plaintiff reported consistent improvement in his hypostatic symptoms and described them as "very manageable" even without full resolution. (Tr. 437; *see also* Tr. 406, 408, 412, 414, 416, 420, 424, 439, 441, 443, 448, 454, 458, 460, 462, 466, 715, 724, 735-736). The ALJ repeatedly cited to Dr. Ward's treatment records, which provided no support for his cursory opinions. The most recent records *after* the date of Dr. Ward's opinions also reflect that Plaintiff's orthostatis was "much improved" with no orthostasis on exam. (*See* Tr. 728, 735-36). With respect to the alleged postural limitations, the ALJ noted that Plaintiff did not use any type of assistive device and that no medical provider (including Dr. Ward) had documented any difficulty walking during clinical examinations. (Tr. 20-21, 23). Also undermining Dr. Ward's opinions and supporting the RFC as determined were the fact that Plaintiff's physicians recommended that Plaintiff increase his exercise activity. (Tr. 24, 424, 428). The ALJ did not entirely reject all of Dr. Ward's opinions, agreeing that Plaintiff experiences increased symptoms in heat and should avoid hazards. The RFC limits Plaintiff's concentrated exposure to heat, and also reasonably limits climbing and hazards. (Tr. 20, 25, 721).

16

Plaintiff more broadly complains that because the ALJ did not cite to a specific medical opinion for the RFC limitation to "frequent" stooping[9] or for other limitations, the ALJ must have been "play[ing] doctor." (Doc. 8 at 11-12, PageID 775-776). The Court disagrees. To be clear, there is no requirement that RFC limitations be supported by specific medical opinion evidence, so long as the RFC as determined is supported by other substantial evidence in the record as a whole. "The Social Security Act instructs that the ALJ – not a physician – ultimately determines a claimant's RFC." *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 439 (6th Cir. 2010); *see also Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157 (6th Cir. 2009) ("[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding."); 20 C.F.R. § 404.1546(c).

Here, the ALJ's evaluation of Dr. Ward's conclusory RFC opinion and corresponding assessment of Plaintiff's RFC, following a thorough discussion of all of the medical and nonmedical evidence, is quite different cases in which an ALJ has been found to "play doctor." *See Wilkerson v. Comm'r of Social Sec.*, Case No. 1:12–cv–868, 2013 WL 6387810, at *8 (S.D. Ohio 2013) (holding that an ALJ may overstep her role if she reads an x-ray report and arrives at a conclusion not otherwise supported by a medical doctor, but does not overstep when she merely points out inconsistencies between the objective evidence, clinical records and a physician's disability-related opinions). The case cited by Plaintiff, *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181 (6th Cir. 1994), is easily distinguished both on its facts and on the law. There, the

---

[9]As the Commissioner points out, two of the representative jobs required no specific postural activities (i.e., stooping). (Tr. 26-27, 54).

17

ALJ not only failed to cite to the record but disregarded the opinions of a treating physician whose opinions were entitled to "controlling weight" under a regulatory scheme that no longer applies. *Id.*, 344 Fed. Appx. at 194 (reversing where the ALJ substituted treating physician's opinion with his own, rather than relying upon other evidence in the record such as "her testimony as to her daily activities or another doctor's testimony as to her condition."). By contrast, the ALJ in this case stayed safely in her lane by appropriately evaluating Dr. Ward's check-box RFC opinions without making independent medical judgments. Because the Court can easily follow the ALJ's reasoning and finds her analysis to be substantially supported by the record as a whole, the Commissioner's decision will be affirmed.

### III.  Conclusion and Order

For the reasons explained herein, **IT IS ORDERED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge